**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **CENTURY SURETY COMPANY** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL NO. L-05-766 |
| | : | |
| **APPLIED ROOFING** | : | |
| TECHNOLOGIES, Inc., et al. | : | |
| Defendant(s). | : | |

**MEMORANDUM**

I.   Background

On July 13, 2004, Hanover, Maryland suffered a heavy rainstorm, during which rainwater entered Kop-Flex's administrative offices through two open drain holes, causing damage within the building.

This incident spawned two lawsuits. The first, Emerson Power Transmission Coroporation, et al. v. Applied Roofing Technologies, Inc., et al., (Civil Action No. L-04-3508, the "underlying action"), seeks damages from the roofing company and the subcontractor that allegedly left the drain holes uncovered. That case is scheduled for a settlement conference before Magistrate Judge James K. Bredar on January 5, 2006. The second, the instant case, is brought by Century Surety Company ("Century"), Applied Roofing Technologies' ("ART") insurer. Century seeks a declaratory judgment that it has no duty to defend or to indemnify ART in the underlying action.

ART filed a motion for partial summary judgment. ART seeks a declaration that (i) Century has a duty to defend it in the underlying action, and (ii) Century's counsel must participate in the settlement conference.

The Court held a hearing on the motion for December 20, 2005. Mr. William Parler presented oral argument for ART, and Mr. Jeffrey Schmieler for Century.

For the reasons stated herein, the Court will, by separate Order filed this date, deny ART's

motion for partial summary judgment.  The Court will enter partial summary judgment for Century, because the allegations in the amended complaint in the underlying action do not trigger the duty to defend.

II.     Standards

   A. Choice of Law

The policy was produced in Pittsburgh and delivered to the insured or the broker in Pennsylvania.  Under Maryland law, the *locus contractus* is Pennsylvania; therefore Pennsylvania law governs.   See e.g. Commercial Union Insurance Co. v. Porter Hayden Co., 698 A.2d 1167, 1199-1200 (Md. App. 1997) (citing Aetna Casualty & Sur. Co. v. Souras, 552 A.2d 908 (Md. App. 1989)).

   B. Duty to Defend

"An insurer's duty to defend is a distinct obligation, different from and broader than its duty to indemnify. . . An insured has purchased not only the insurer's duty to indemnify successful claims which fall in the policy's coverage, but also protection against those groundless, false, or fraudulent claims, regardless of the insurer's ultimate liability to pay. . . Not all claims asserted against an insured, however, activate the insurer's duty to defend. . . The insurer's obligation to defend is fixed solely by the allegations in the underlying complaints. . . it is the face of the complaint and not the truth of the facts alleged therein which determine whether there is a duty to defend.  Aetna Casualty and Surety Company v. Roe, 650 A.2d 94, 98-99 (Pa. Super. 1994).

"In order to determine whether a claim may potentially come within the coverage of the policy, we must first ascertain the scope of the insurance coverage and then analyze the allegation in the complaint."  Phico Insurance Company v. Presbyterian Medical Services Corp., 663 A.2d 753, 755 (Pa. Super. Ct., 1995) (internal citations omitted).  Then the Court turns to "the next logical issue," which involves the applicability of the policy exclusions.  Id. at 756.

III.     Analysis

The settlement conference is fast approaching. The Court will, therefore, incorporate by reference the statement of facts and law that the undersigned read into the record at the beginning of the hearing. In the interest of time, this memorandum will focus on the operative legal conclusions.

As the standard for the duty to defend states, the Court looks only to the four corners of the insurance policy and the four corners of the underlying complaint. This is commonly known as the "eight corners" doctrine. See e.g. Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., et al., 407 F.3d 631 (4th Cir. 2005).

   A. The Policy

Century's "Commercial Lines Policy," a fifty-two page document, provided coverage to ART from May, 2004 to May, 2005. The annual premium was $9,503. The coverage provided a general aggregate limit of $2,000,000, excluding product-completed operations, which had a separate aggregate limit of $1,000,000. The personal and advertising injury limit was $1,000,000, and the limit for each "occurrence" was $1,000,000.

The basic coverage clause is as follows:

> COMMERCIAL GENERAL LIABILITY COVERAGE INSURANCE FORM
> 1. Insuring Agreement
> > a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.[1]

The policy contains numerous coverage exclusions, including the following two:

> COMMERCIAL GENERAL LIABILITY COVERAGE INSURANCE FORM

---

[1] The parties do not dispute that an "occurrence" caused "property damage" under the terms of the policy.

  2. Exclusions
This insurance does not apply to . . .
   b. Contractual Liability
   "Bodily injury or "property damage" for which the insured is obligated to pay
   damages by reason of the assumption of liability in a contract or agreement.  This
   exclusion does not apply to liability for damages:
   (1) That the insured would have in the absence of the contract or agreement; or
   (2) Assumed in a contract that is an "insured contract". . .

  * * *

CONTRACTORS AMENDATORY ENDORSEMENT
A. In consideration of the premium charged this policy has been issued subject to the
following exclusions being added to Coverages A & B:
This insurance does not apply to: . . .
   3. Open Structures
   "Property damage" to any building or structure, or to any property within any such
   building, during the course of roofing, including the removing of roof materials or
   reinstalling roofing materials or during the course of any other construction activity
   that involves a portion of the building or structure being open to the elements and
   arising out of, resulting from or caused by water, rain, hail, sleet or snow.

  However, this exclusion does not apply to the "products-completed operations hazard".[2] [sic]

  The burden is on the insurer to show that the exclusions apply.  <u>Union America Ins. Co., Ltd.
v. J.B. Johnson Roofing Co., Inc.</u>, 806 A.2d 431, 434 (Pa. Super. 2002).

---

  [2]In pertinent part, the policy defines "products-completed operations hazard" as:
  "Includes all "bodily injury" and "property damage" occurring away from premises you
own or rent and arising out of "your product" or "your work" except: . . .
  . . .(2) Work that has not yet been completed or abandoned.  However, "your work" will
be deemed completed at the earliest of the following times:
   (a) When all of the work called for in your contract has been completed.
   . . .
   (c) When that part of the work done at the job site has been put to its intended use
   by any person or organization other than another contractor or subcontractor
   working on the same project.

  Work that may need service, maintenance, correction, repair or replacement, but which is
  otherwise complete, will be treated as completed.

B. <u>The Contractual Liability Exclusion</u>

Count 1 of the amended complaint clearly sounds in contract law. It alleges a breach based on ART's failure to perform the contract in a workmanlike manner. ART argues, however, that the contract liability exception does not apply because Count 2 of the amended complaint sounds in tort for negligence, thus triggering a duty to defend the entire suit.

We disagree. Pennsylvania law's "gist of the action" doctrine bars tort claims that arise solely or principally from a contract. <u>See</u> <u>Bash v. Bell Tel. Co.</u>, 601 A.2d 825, 829 (Pa. Super. 1992); <u>eToll, Inc. v. Elias/Savion Advertising, Inc.</u>, 811 A.2d 10, 20 (Pa. Super. 2002); <u>see</u> <u>also</u> <u>Factory Market, Inc. v. Schuller Int'l</u>, 987 F.Supp. 387, 394 (E.D. Pa. 1997). The doctrine "precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." <u>Bash</u>, 601 A.2d at 829. "To be construed as in tort, however, the wrong ascribed to the defendant must be the gist of the action, the contract being collateral." <u>Id</u>.

Count 2 of the amended complaint incorporates ¶¶ 8-13 of the "facts common to all counts." Paragraph 8 states "[Emerson] and Kop-Flex entered into a contract with ART. . . which provided for removal of 17,500 square feet of existing roof and installation of a new roof system. . ." Paragraph 12 states "employees of Dezigns, Inc. who were working on the roof project pursuant to their subcontract with ART, cut holes in the membrane so access could be gained to the roof drain lines so they could be cleaned. After the drain lines were cleaned, the drain holes were sealed. However, Dezigns, Inc. employees failed to seal two drain holes in the middle of the roof after the drains were cleaned." Paragraph 12 alleges that this failure allowed water to pour in through the drains during the rainstorm.

Under the "gist of the action" doctrine, the "gist" of the complaint is breach of contract, rather than tort. <u>See</u> <u>e.g.</u>, <u>Phico</u>, 663 A.2d at 758 (applying gist of the action doctrine in a "duty to defend"

case. The Pennsylvania superior court held that although the insurance policy covered claims for gross negligence and willful misconduct, the underlying claims for negligence and willful misconduct arose out of the performance of the underlying contract, and were therefore excluded from coverage.). Under the clear application of Phico, the contract liability exception excludes coverage in the instant case.

   C. The Open Structures Exclusion

ART attempts to avoid the open structures exclusion through two arguments: (i) that the building was not an open structure because it was completely sealed by the roof membrane, and only after the roof had been sealed did the subcontractor open the drain holes, and (ii) that the "products-completed operations hazard" exception to the exclusion applies because the roofing job was virtually finished before the accident.[3] Both arguments are unavailing.

The open structures exclusion clearly applies on its face because the damage happened "during the course of roofing." The "products-completed operations hazard" does not apply because the amended complaint specifically alleges in ¶¶ 10-12 that "while removing the old roof and installing a membrane for the new roof," Dezigns cut the membrane and failed to recover the drain holes before the disastrous rainstorm. Moreover, Mr. Parler conceded at oral argument that flashing and other work remained to be done pursuant to the roofing contract, although he characterized the remaining work as minor and "tangential." Under the definition of "products-completed operations," work is complete when "*all* of the work called for in your contract has been completed." (Emphasis added). The products-completed operations hazard exception does not, therefore, provide coverage over the open structures exclusion.

---

[3]See footnote 3, supra, for the definition of the "products-completed operations hazard."

IV.     Conclusion

Based on the plain language of the insurance policy and the allegations in the underlying amended complaint, Century has no duty to defend ART in its dispute with Emerson Power. The Court grants Century's oral motion for summary judgment to that effect. This ruling does not foreclose the possibility that the complaint might be amended to trigger a duty to defend. This ruling also does not decide the ultimate coverage question, which will depend on the facts eventually proved in the underlying action rather than the allegations in the underlying complaint.

Unless Magistrate Judge Bredar desires Century's attendance at the settlement conference, the insurer has no duty to attend.


It is so ORDERED this 22nd day of December, 2005.


/s/
_____
Benson Everett Legg
Chief Judge